IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jodi DeMonte, on behalf of herself and others similarly situated, and Mark DeMonte, <br><br> Plaintiffs, <br><br> v. <br><br> Apple Inc. and AppleCare Service Company, Inc., <br><br> Defendants. | Case No. 23 C 1133 <br><br> Hon. LaShonda A. Hunt |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Jodi and Mark DeMonte sued Defendants Apple Inc. and AppleCare Service Company, Inc. for various individual and class action contract and tort claims, alleging that Defendants sold and provided inferior products and services to customers with "@me.com" Apple IDs. In response, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, Defendants' Motion to Dismiss [17] is granted in part and denied in part.

### BACKGROUND

Plaintiffs are longtime Apple customers, with a purchase history dating back over 20 years. (Compl. ¶ 13, Dkt. 1-1). They have bought numerous Apple products, including iPhones, iPads, Macs, MacBooks, Apple Watches, and AirPods, along with AppleCare or AppleCare+ warranties. (*Id.*) In the mid-2000's, Jodi purchased an "@me.com" Apple ID from Apple. (*Id.* ¶ 14). Over a decade later, in early 2021, Plaintiffs began experiencing issues with their Apple products and services relating to functionality, data privacy, data security, and device integrity. (*Id.* ¶ 18). Despite their exhaustive requests for assistance over the phone, Defendants did not acknowledge

1

or fix the issues to Plaintiffs' satisfaction. (*Id.* ¶¶ 19-31). Instead, Defendants suggested that Plaintiffs visit a physical store for assistance even after being informed that Plaintiffs suffered from health and other issues that prevented them from visiting a store in-person. (*Id.* ¶¶ 32-33). Plaintiffs escalated the matter by writing Defendants' legal department about the ongoing issues on May 11 and June 5, 2021. (*Id.* ¶¶ 34-36). On July 12, 2021, Defendants acknowledged receipt of Plaintiffs' communication and informed Plaintiffs that "Apple [had] performed an investigation . . . [that] demonstrated Apple provided the appropriate level of support." (*Id.* ¶¶ 37-38).

Notwithstanding Defendants' assurances, Plaintiffs continued to experience and report the same technical and service issues for months. (*Id.* ¶¶ 40-43). During this time, Defendants acknowledged that their prior services and investigation had been deficient and unacceptable. (*Id.* ¶ 44). Critically, "Defendants' agents also disclosed that Plaintiff Jodi DeMonte's status as an @me.com user was likely a root cause of the technical issues suffered by Plaintiffs because Apple has to treat those @me.com Apple ID accounts differently that they treat other Apple ID accounts that were created later in time with different user IDs, like @icloud.com." (*Id.* ¶ 46).

Ultimately, around Spring 2022, Defendants replaced or repaired Plaintiffs' Apple products and services because an investigation concluded that Plaintiffs' products and services had needed repair or replacement since approximately February 2021. (*Id.* ¶ 48). Plaintiffs believe that information they shared with Defendants was critical to later updates to software or services. (*Id.* ¶ 49). Nonetheless, Defendants did not pay Plaintiffs a monetary award (i.e., a bounty) that they offer to the public for reporting security or vulnerability issues. (*Id.* ¶¶ 16-17, 50-51). Plaintiffs claim that Defendants' conduct caused them to suffer monetary and other damages, including the exacerbation of physical and other health issues. (*Id.* ¶ 52).

Plaintiffs believe that they are not the only Apple customers who experienced issues due to having an @me.com Apple ID. (*Id.* ¶¶ 55-66). Because Apple has total control over customers' Apple IDs and the operating systems and software that run on Apple products, Plaintiffs assert that all users with @me.com Apple IDs experience lower quality service and technical issues. (*Id.* ¶¶ 55-56). That is because Apple maintains different procedures for those IDs despite having represented otherwise and not disclosing the difference to users. (*Id.* ¶¶ 57-59).

On February 23, 2023, Mark, individually, and Jodi, on behalf of herself and other Illinois residents who purchased an @me.com Apple ID after 2000, received Apple services, software, or products, and suffered the same damages, commenced this putative class action. (*Id.* ¶¶ 60-62). Plaintiffs assert individual claims for breach of contract,[1] negligence, gross negligence, and intentional infliction of emotional distress ("IIED") (Counts I-VII); individual and class claims for fraudulent misrepresentation, negligent misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts VIII-XIII); and a class claim for fraudulent misrepresentation by omission (Count XIV).

## LEGAL STANDARD

Rule 12(b)(6) permits a party to move for dismissal based on a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim under Rule 12(b)(6), courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and

---

[1] The section of the Complaint containing Plaintiff's contract claims is entitled "**INDIVIDUAL CLAIMS FOR RELIEF**". (Compl. at 11). However, Counts I-IV each allege that "Plaintiff *and the Class* may recover all damages . . . ." (*Id.* ¶¶ 76, 86, 96, 106) (emphasis added). Subsequently, the Complaint includes a section entitled "**CLASS ACTION CLAIMS**". (*Id.* at 21). Thus, it appears that the references to "the Class" in the individual claims section in paragraphs 76, 86, 96, and 106 were erroneous, and Counts I-IV were intended to be individual (not class) claims.

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). While ruling on a motion to dismiss for failure to state a claim, a court may generally consider only the plaintiff's complaint, exhibits to the complaint, matters central to the plaintiff's claim and incorporated into the complaint by reference, and items subject to judicial notice. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION[2]

Defendants seek dismissal of Plaintiffs' entire Complaint with prejudice. In general, Defendants argue that the Complaint fails to state a claim because the allegations are too broad and lack sufficient factual content. Specifically, Defendants contend that Plaintiffs failed to allege key facts such as the relevant contract provision breached or misrepresentation made by Defendants. In addition, Defendants assert that gross negligence is not a viable claim under Illinois law and purportedly bad customer service is not outrageous enough to support an IIED claim.

---

[2] It appears undisputed that Illinois law applies in this case, and the Court has no reason to conclude otherwise. As such, the Court will apply Illinois law to Plaintiffs' claims.

Finally, Defendants challenge whether Plaintiffs have sufficiently alleged any actual injury. The Court will address these issues as they relate to each claim in turn.

I.   **Breach of Contract (Counts I-IV)**

In Counts I-IV of the Complaint, Plaintiffs assert individual claims for breach of contract based on agreements that arose from the purchase of Plaintiffs' iPhone 11 Max Plus cell phone,[3] iPhone 12 Pro cell phones, and first and second MacBook Air laptops. (Compl. ¶¶ 67-106). To state a claim for breach of contract under Illinois law, plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (quoting *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022)); *see also Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1063 (N.D. Ill. 2021). If a plaintiff does not identify the relevant contract provision, the claim must be dismissed. *See, e.g., Gandhi v. Sitara Cap. Mgmt., LLC*, 689 F. Supp. 2d 1004, 1016 (N.D. Ill. 2010) ("By not identifying in their complaint the provision of the Limited Partnership Agreement allegedly breached, plaintiffs fail to satisfy this low threshold."); *Burke v. 401 N. Wabash Venture, LLC*, No. 08 C 5330, 2010 WL 2330334, at *2 (N.D. Ill. June 9, 2010) ("The Court fails to see how, post-*Iqbal,* a plaintiff could state a claim for breach of contract without alleging which provision of the contract was breached. [Citation omitted.] Without alleging a contract provision that was breached, the claim is merely possible, not plausible.")

In support of their breach of contract claims, Plaintiffs allege that: they entered into contractual relationships with Defendants in connection with the purchase of their Apple products;

---

[3] Defendants assert that there is no Apple product bearing the name "iPhone 11 Max Plus." (Mot. at 14 n.4, Dkt. 17).

5

the contracts required Defendants to undertake reasonable, good faith investigation and repair or replace any devices that were having technical issues like Plaintiffs experienced; Defendants failed to do so; and Plaintiffs were damaged as a result of such failures. (Compl. ¶¶ 70-75, 80-85, 90-95, 100-105). Plaintiffs do not attach copies of the applicable contracts or directly quote the relevant provisions; instead, they allege that, "[o]n information and belief, the applicable Contracts between Plaintiffs and Defendants, which can be identified by Defendants' records, may be found at: https://www.apple.com/legal/." (*Id.* ¶¶ 72, 82, 92 ,102).

Defendants' primary argument for dismissal of Plaintiffs' contract claims is that they fail to identify the applicable contracts themselves, let alone the provisions that purportedly require Defendants to investigate and repair or replace devices affected by technical issues. But even if Plaintiffs had delineated this information, Defendants contend that their claims would still fail because the allegations concerning Defendants' response to Plaintiffs' issues throughout 2021 and 2022 demonstrate that Defendants did in fact investigate and then resolve the problems.[4]

Plaintiffs respond that "[b]ecause [Defendants] have in their possession but have yet to identify and produce the specific contracts they reference, Plaintiffs alleged, on information and belief, the existence of the contractual provision that was identified by the Defendants' own employees regarding their obligation to actually undertake a good faith effort to investigate and

---

[4] Defendants also contend that Apple's product warranties can be found on the website referred to by Plaintiffs and apply for only one year. Although Plaintiffs did not allege when they purchased the various Apple products or when the applicable contracts were purportedly entered into, Defendants aver that several of the products referenced in Plaintiffs' claims were released well over a year before the technical issues arose and therefore any applicable warranty would have expired.

The Court summarily rejects Defendants' argument regarding warranties, as there is no reference to a warranty claim in the Complaint and, in any event, determination of whether Plaintiffs' claims fall outside the one-year warranty term would improperly require the resolution of factual issues that are undeveloped at the pleading stage. Furthermore, Plaintiffs expressly disclaim that their contract claims are based on any warranties. (Resp. at 6 n.2, Dkt. 27).

6

resolve the technical issues that [Defendants] ultimately acknowledged by repairing or replacing the devices and services." (Resp. at 5). In addition, Plaintiffs dispute whether the fact that Defendants ultimately investigated and resolved Plaintiffs' issues defeats their claims because the focus of their Complaint is Defendants' conduct before eventually investigating and resolving the issues.

The allegations in support of Plaintiffs' contract claims are sufficient to state a plausible claim. As to Defendants' primary argument for dismissal, the Court is satisfied that Plaintiffs have adequately identified the contract provisions at issue. Although Plaintiffs alleged "on information and belief" that the applicable contracts may be found on Defendants' website, (*see, e.g.,* Compl. ¶¶ 71-72), this practice is generally allowed where the facts are within the possession and control of the defendant. *Rosenstock v. Sollars*, No. 18 C 4554, 2018 WL 5808471, at *5 (N.D. Ill. Nov. 6, 2018). Given that the product purchases at issue here span over 20 years, it is reasonable to infer that Plaintiffs were unable to locate the exact contract at issue in their own records or on Defendants' website and thus Defendants' records will be necessary to identify them. In addition, Plaintiffs stated the source of their information and belief to be Defendants' own employees. Under these circumstances, it appears that Plaintiffs provided as much information about the contracts as they could. Despite Defendants' insistence that Plaintiffs failed to offer more concrete details, Plaintiffs' have provided enough facts at this point to put them on notice of their claims. Indeed, if the applicable contracts did not reference any such obligation to investigate and resolve problems, Defendants could have attached copies to their motion.[5] And they may still raise the issue at a later stage in the case once the factual record is more developed.

---

[5] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim." *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (quoting *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994) (emphasis added)).

Defendants' alternative argument does not fare any better. Plaintiffs' allegations are clearly focused on the period of time when Defendants allegedly failed to "undertake a reasonable, good faith investigation" and did not repair or replace Plaintiffs' devices, before they began to take Plaintiffs seriously by actually investigating and resolving their issues. To the extent Defendants breached the contracts in that regard and Plaintiffs suffered damages, the allegations in support of the breach of contract claims "permit the court to infer more than the mere possibility of misconduct[.]" *See Iqbal*, 556 U.S. at 679. Accordingly, Counts I-IV may proceed.

**II.     Negligence (Count V)**

In Count V, Plaintiffs assert individual claims for negligence based on Defendants' alleged failure to reasonably communicate, investigate, and address Plaintiffs' technical issues and preserve information associated with Plaintiffs' accounts and communications. (Compl. ¶¶ 107-111). "In order to state a legally sufficient claim of negligence, a complaint must allege facts establishing the existence of a duty of care owed by the defendants to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011); *see also Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014); *Buechel v. United States,* 746 F.3d 753, 763-64 (7th Cir. 2014). Illinois law recognizes the economic loss doctrine which "bars tort recovery for purely economic losses[,]" *Gaudie v. Countrywide Home Loans, Inc.*, 683 F. Supp. 2d 750, 760 (N.D. Ill. 2010) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill. 2d 69, 82 (1982)), however, "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Gaudie*, 683 F. Supp. 2d at 761 (quoting *Congregation of the Passion v. Touche Ross & Co.,* 159 Ill. 2d 137, 161 (1994)).

Defendants argue that Plaintiffs' negligence claims should be dismissed because they have failed to sufficiently allege the existence of a duty, breach of that duty, and a causal link between the alleged breach and any damages. In addition, even if Plaintiffs adequately alleged the requisite elements of negligence, Defendants contend that the economic loss rule bars the claim because Plaintiffs' own allegations connect the duty (to reasonably communicate, investigate, or address Plaintiffs' technical issues) to the purported contract provisions (requiring investigation and resolution). Plaintiffs respond by referring back to the allegations of the Complaint and arguing that the duties allegedly breached by Defendants are broader than those contemplated by the contracts.

As alleged, the duty owed by Defendants was limited to "act[ing] with reasonable care when dealing with customers like Plaintiffs, investigating Plaintiffs' technical issues and working to address them." (*See* Compl. ¶ 108). The scope of that duty is essentially the same as the obligation to "undertake a reasonable, good faith investigation and repair or replace any devices that were having technical issues" under the contracts. And although Plaintiffs allege that the duty arose from Defendants' "own statements and standards[,]" there are no other allegations (except the contract allegations) that shed light on the source or content of those statements or standards. As such, the Court agrees that Plaintiffs have not plausibly alleged the existence of any duty outside of the contract. Absent such a duty, Plaintiffs cannot state a claim for negligence based on Defendants' actions with respect to the technical issues they experienced. To the extent that Plaintiffs negligence claim is also based on spoliation, the claim fails because it is dependent on the existence of underlying negligent conduct. *See Houck v. USA*, No. 16 C 1268, 2017 WL 1397743, at *7 (S.D. Ill. Apr. 19, 2017). Accordingly, Count V of the Complaint is dismissed.

### III. Gross Negligence and IIED (Counts VI & VII)

In Counts VI and VII, respectively, Plaintiffs assert individual claims for gross negligence and IIED. (Compl. ¶¶ 112-126). After offering responses to Defendants' various arguments for dismissal, Plaintiffs voluntarily withdrew these claims without prejudice. (Resp. at 9). Accordingly, Counts VI and VII of the Complaint are dismissed.

### IV. Fraudulent and Negligent Misrepresentation (Counts VIII & IX)

In Counts VIII and IX, respectively, Plaintiffs assert individual claims for fraudulent and negligent misrepresentation based on statements that Defendants were undertaking a reasonable investigation of Plaintiffs' technical issues and that Plaintiffs' devices did not need to be repaired or replaced. (Compl. ¶¶ 127-144). The elements of a fraudulent misrepresentation claim are: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (quoting *Doe v. Dilling*, 228 Ill. 2d 324, 342-43 (2008)). To state a claim for negligent misrepresentation, a plaintiff must allege the same elements as fraudulent misrepresentation, except that instead of knowledge or belief of the falsity of the statement, all that is required is "carelessness or negligence in ascertaining the truth of the statement by the party making it[.]" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833-34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334 (2006)). In addition, for negligent misrepresentation, plaintiff must allege "a duty on the party making the statement to communicate accurate information." *Tricontinental*, 475 F.3d at 833-34 (quoting *First Midwest*, 218 Ill. 2d at 335). While a fraudulent misrepresentation claim must meet the heightened pleading standard of Rule 9(b), such

particularity is not required for a misrepresentation claim based on negligence. *Tricontinental*, 475 F.3d at 833, 840.

Although Defendants dispute whether Plaintiffs have adequately alleged any of the elements of these claims, their principal arguments are that (1) statements made by Defendants after Plaintiffs purchased Defendants' products cannot support these claims; and (2) Plaintiffs failed to allege that they relied (let alone *justifiably* relied) on Defendants' statements. Defendants' first argument misses the mark. Plaintiffs confirm in their response that their misrepresentation claims are not based on statements made in connection with the purchase of any product but rather statements made by Defendants between February and September 2021 in connection with Plaintiffs' requests for assistance with technical issues. Because Plaintiffs' individual misrepresentation claims do not rely on any events that took place before their Apple products were purchased, any statements made before purchase would be irrelevant.

Plaintiffs characterize Defendants' second argument concerning reliance as "circular, victim-blaming logic" and say that "Defendants' misrepresentations led Plaintiffs to believe something was happening with their devices other than the technical issues with [Defendants'] devices and services—which resulted in a saga with other providers (cell phone providers, internet providers, etc.) . . . and also resulted in months of loss of use of devices and services (despite having to pay for them)." (Resp. at 11). Setting aside the parties' rhetoric and focusing on the allegations of the Complaint itself, the Court concludes that Plaintiffs have not sufficiently alleged justifiable reliance. Not only does the Complaint lack allegations about Plaintiffs' interactions with other providers and loss of use, but Plaintiffs' own allegations also show that they did not in fact rely on Defendants' statements. Plaintiffs' misrepresentation claims are based on Defendants' statements that they had investigated the reported technical issues and found no problems. In spite

11

of these representations, Plaintiffs sent follow-up communications regarding the "ongoing technical and service issues" and "persevered with raising the technical and service issues[.]" (Compl. ¶¶ 26, 41). By continually requesting assistance with the issues instead of taking Defendants at their word, Plaintiffs were essentially disagreeing with and refusing to rely on Defendants' statements. Without reliance, Plaintiffs cannot maintain their individual claims for fraudulent or negligence misrepresentation. Accordingly. Counts VIII and IX of the Complaint are dismissed.

## V. ICFA (Count X)

In Count X, Jodi asserts an individual claim under the ICFA based on Defendants' failure to pay her a bounty in exchange for providing information that met the criteria of the bounty program. (Compl. ¶¶ 145-149). The "ICFA 'is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 416-17 (2002)). The ICFA "is to be liberally construed to effectuate its purpose." *Robinson*, 201 Ill. 2d at 417. To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel*, 612 F.3d at 934. "In addition, to prevail under ICFA, a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." *Id.* at 935.

Depending on whether a plaintiff is alleging an ICFA claim based on either deceptive or unfair conduct, the pleading standards are different. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). For a claim based on deceptive conduct, a plaintiff must meet Rule 9(b)'s

heightened standard, *id.*, and also allege that the conduct was likely to deceive reasonable consumers, *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020). Unfair practice claims are not subject to Rule 9(b), but "even under Rule 8, [the plaintiff] must 'describe how the [unfair practice] is oppressive or violates public policy. Without such a description, the complaint fails to state a cause of action.'" *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 996 (N.D. Ill. 2019) (quoting *O'Brien v. Landers*, No. 10 C 2765, 2011 WL 221865, at *5 (N.D. Ill. Jan. 24, 2011)).

Under either standard, the allegations of the Complaint are insufficient to state a claim under the ICFA based on Defendants' failure to pay Jodi a bounty. Plaintiffs allege that Defendants offer monetary rewards as part of their bounty program that provides payouts for reported security and vulnerability issues, and reported issues with a significant impact will be considered even if they do not fit into a published category. (Compl. ¶¶ 16-17) (citing Defendants' website). Because Plaintiffs provided information to Defendants about the @me.com Apple ID issues that were later addressed through various updates and met the criteria for payment of a bounty, Plaintiffs believe they should have received a bounty under the program. (*Id.* ¶¶ 49-50, 147-148). According to Plaintiffs, Defendants' failure to pay their bounty is just a recent example in a long history of withholding bounties that should have been paid. (*Id.* ¶ 51).

As an initial matter, the Complaint is devoid of any allegations that explain how the purported unfair practice of failing to pay a bounty is oppressive or violates public policy. Courts are required to take factual allegations as true and draw reasonable inferences from them in the plaintiff's favor, but here there are simply no allegations that even touch on how Defendants' conduct is oppressive or violates public policy. The allegation that Defendants have a history of unreasonably withholding bounties is insufficient because it does not connect Defendants' conduct

to the consumers or policy affected. (*See id.*) Plaintiffs refer to a policy against businesses defrauding Illinois citizens, (Resp. at 14), but the Complaint itself contains no allegations about that policy nor does it describe how Defendants' conduct violated it. Absent such allegations, the Complaint cannot state a claim for an unfair practice under the ICFA. *See Boone*, 375 F. Supp. 3d at 996 (dismissing ICFA unfair practices claim because it failed to "articulate how any of [the plaintiff's] claims [were] oppressive or violate[d] public policy.").

To the extent the claim is based on deceptive conduct, the allegations are also insufficient. Under Rule 9(b)'s heightened pleading standard, a plaintiff must allege the "who, what, when, where, and how" of the deceptive conduct. *See Vanzant*, 934 F.3d 730, 738 (7th Cir. 2019). While the Complaint contains a general summary of the bounty program and states that Jodi met the criteria, it lacks any meaningful information about how the program operates or the criteria for consideration for payment. Without those details, the allegations fall short of Rule 9(b) and fail to state a plausible claim for relief under this theory. For these reasons, Jodi fails to state a claim under the ICFA based on Defendants' failure to pay her a monetary award under the bounty program. Count X of the Complaint is dismissed.

| VI. | **Class Action Claims (Counts XI-XIV)** |
|---|---|

In Counts XI-XIV, respectively, Plaintiffs assert class claims for violation of the ICFA, fraudulent misrepresentation, negligent misrepresentation, and fraudulent misrepresentation by omission. (Compl. ¶¶ 150-177). All these claims stem from the theory that users with @me.com Apple IDs did not receive the satisfactory service quality and experienced technical issues. (*Id.*

¶¶ 151, 159, 165, 173). Because the class claims are all based on allegations of fraud,[6] each must be pled with particularity. Fed. R. Civ. P. 9(b).

Defendants argue that all of Plaintiffs' class claims fail to meet the heightened pleading standard. Specifically, Defendants contend that each claim essentially recites the elements of such claim without providing any factual basis. (*See* Mot. at 23) (listing allegations of knowledge, misrepresentation, and reliance, all lacking factual support) (citing Compl. ¶¶ 152, 166, 159-161 (knowledge); 159, 165 (misrepresentations); 174 (reliance)). In response, Plaintiffs state that their allegations are sufficient and theories of liability are straightforward: "Defendants sold @me.com accounts to Illinois users like Ms. DeMonte under the false pretenses that those accounts would experience the same level of service quality as other non-@me.com Apple ID users, when in fact they do not[.]" (Resp. at 14). While the Court agrees that Plaintiffs' theory is straightforward, it disagrees that these allegations are sufficient to state a claim. Critically, a claim premised on false pretenses must plausibly allege a defendant's awareness of the falsity of the misrepresentation. Here, although Plaintiffs allege that Defendants "knew or should have known" the deceptive nature and falsity of their statements or omissions, those allegations are completely lacking in factual support. (*See* Compl. ¶¶ 152, 160, 166, 174). Rule 9(b) permits a plaintiff to allege knowledge generally, but a plaintiff "must [still] provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Plaintiffs' class claims fail to meet this basic standard as to several requisite elements. Accordingly, Counts XI-XIV of the Complaint are dismissed.

---

[6] This includes even Count XIII for negligent misrepresentation, which despite its name contains allegations of fraudulent conduct. (*See id.* ¶170) ("Defendants' or their agents' fraudulent misrepresentations damaged Plaintiffs . . . .").

**VII.** **Leave to Amend**

In response to Defendants' request for dismissal with prejudice, Plaintiffs ask for leave to file an amended complaint if any counts are dismissed. (Resp. at 15). "Ordinarily . . . a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [the] complaint *before the entire action is dismissed*." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (emphasis added). Here, the entire action is not being dismissed, so the Court declines to grant leave to amend at this time.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [17] is granted in part and denied in part. Counts V-XIV of the Complaint are dismissed. Defendants' answer to the surviving claims is due by October 1, 2024. The parties are directed to meet and confer for a Rule 26(f) scheduling conference and file a proposed discovery plan by October 15, 2024.

**DATED**: September 9, 2024          **ENTERED**:

*[signature]*

LaShonda A. Hunt
United States District Judge

16